United States Bankruptcy Court
Southern District of Texas
ENTERED
October 20, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-70084** |
| **MARGO AND JONES, INC.,** | § | |
| | § | **CHAPTER 7** |
| **Debtor.** | § | |
| | § | |
| **ROBERT H. CRANE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 25-7004** |
| | § | |
| **MARGO AND JONES, INC., AUTOWASH CORP., RNS-CRANE, LLP, CCN SERVICES CORPORATION, and SCC SERVICES CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Pending before this Court are several matters self-styled as the (1) "Motion for Summary Judgment" filed on December 2, 2025, at Dkt. No. 17 by Robert H. Crane ("*Plaintiff*"); (2) "Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6)" filed on December 4, 2025, at Dkt. No. 19 by Plaintiff; (3) "Motion for Sanctions Against Sasha Crane for Violations of Automatic Stay" filed on December 22, 2025, at Dkt. No. 26 by Plaintiff; (4) "Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgement Against Debtors or for Additional Time to Reply to Such Response" filed on December 29, 2025, at Dkt. No. 32 by Plaintiff; (5) "Motion for Leave to Intervene" filed on January 22, 2026, at Dkt. No. 41 by Sasha Crane; and (6) "Motion for Partial Summary Judgment" filed on May 27, 2026, at Dkt. No. 53 by Sasha Crane.

# I. Background

## A. Pre-Bankruptcy Background

On July 14, 2021, Plaintiff filed his original petition in Hidalgo County Court as a suit on a sworn account against Margo and Jones, Inc. ("*Margo and Jones*"), CCN Services Corp. ("*CCN*"), Autowash Corp. ("*Autowash*"), SCC Services Corp., and RNS-Crane, L.L.P. (collectively, "*Defendants*" or "*Debtors*"), captioned *Robert H. Crane v. Margo and Jones, Inc., et al.*, Cause No. C-2744-21-E (the "*State Court Case*"). Dkt. No. 54-1. Plaintiff states that he initially brought this action against the Debtors to recover alleged equalizing dividends owed to him as a 50% owner of the Debtors. Dkt. No. 19, ¶ 1. Sasha Crane claims that this dispute began in Hidalgo County on July 14, 2021, in the State Court Case, and that Plaintiff asserted a sworn-account claim for alleged "dividends/draws" from 2000 through 2021. Dkt. No. 41, ¶ 2.

In the State Court Case, Sasha Crane filed "Defendants Margo and Jones, Inc., Autowash Corp., RNS-Crane, LLP, CCN Services Corporation, and SCC Services Corporation's Petition in Intervention and Verified Answers." Dkt. No. 54-4. On December 21, 2021, Defendants removed the State Court Case to the United States District Court for the Southern District of Texas ("*U.S. District Court*"), McAllen Division. S.D. Tex. Case No. 7:21-cv-00490, Dkt. No. 1. Plaintiff claims that Sasha Crane filed an amended intervention on April 1, 2022, while the case was pending in the U.S. District Court, without consent of the parties or leave of court. Dkt. No. 19, ¶ 3. On June 10, 2022, the U.S. District Court remanded the State Court Case to the Hidalgo County District Court for lack of federal jurisdiction. S.D. Tex. Case No. 7:21-cv-00490, Dkt. No. 52.

**B. The Debtors' Bankruptcy Cases**

On March 20, 2025, the Debtors filed for bankruptcy protection under chapter 7 of the Bankruptcy Code,[1] initiating the Debtors' underlying bankruptcy cases. *E.g.*, Bankr. Dkt. No. 1.[2] On July 3, 2025, in the Debtors' underlying bankruptcy cases, Plaintiff filed a general unsecured proof of claim in the amount of $3,557,180.06 for reciprocal dividends/draws owed, plus interest and legal fees. *E.g.*, Bankr. Claim No. 1. On July 7, 2025, Sasha Crane filed a general unsecured proof of claim in the amount of "unknown" for unpaid distributions and sales proceeds. Bankr. Claim No. 2.

**C. The Instant Adversary Proceeding**

On March 20, 2025, Defendants removed the State Court Case to this Court. Dkt. No. 1. On September 30, 2025, Plaintiff filed his "First Amended Complaint" at Dkt. No. 10. On the same date, Plaintiff filed a copy of "Defendants' Cross-Complaint Against Intervenor" at Dkt. No. 12-2. On October 30, 2025, Sasha Crane, individually, and purportedly derivatively on behalf of Defendants, filed her "Answer to Plaintiff's First Amended Complaint" at Dkt. No. 13. Also on October 30, 2025, Catherine S. Curtis, Chapter 7 Trustee ("*Trustee*") filed "Chapter 7 Debtor Margo and Jones, Inc., Autowash Corp., RNS-Crane, L.L.P., CCN Services Corporation, and SCC Services Corporation's Answer to Plaintiff's First Amended Complaint" at Dkt. No. 14.

**D. Plaintiff's Motion for Summary Judgment and Plaintiff's Motion to Strike Sasha Crane's Response to Plaintiff's Motion for Summary Judgment**

On December 2, 2025, Plaintiff filed his "Motion for Summary Judgment" at Dkt. No. 17. On December 23, 2025, Trustee filed her "Response and Objection to Robert H. Crane's Motion

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., and reference to any section (*i.e.*, §) refers to the corresponding section in 11 U.S.C. unless otherwise indicated.
2 References to docket entries in the instant adversary proceeding, No. 25-7004, take the format of "Dkt. No. __." References to docket entries in the Margo and Jones, Inc. bankruptcy case, No. 25-70084, take the format of "Bankr. Dkt. No. __."

for Summary Judgment" at Dkt. No. 27. On December 23, 2025, Sasha Crane filed her "Response to Plaintiff's Motion for Summary Judgment, and Alternatively, Motion Under FRCP 56(d)" at Dkt. No. 29. On December 29, 2025, Plaintiff filed his "Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgement Against Debtors or for Additional Time to Reply to Such Response" at Dkt. No. 32. On January 9, 2026, Plaintiff filed his "Reply to Chapter 7 Trustee's Response to Motion for Summary Judgment" at Dkt. No. 33. On January 19, 2026, Sasha Crane filed her "Response to Plaintiff's Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgment Against Debtors or for Additional Time to Reply to Such Response" at Dkt. No. 38.

**E. Sasha Crane's Motion to Intervene and Plaintiff's Motion to Strike Intervention**

On January 22, 2026, Sasha Crane filed her "Motion for Leave to Intervene" at Dkt. No. 41. On February 10, 2026, Plaintiff filed his "Response to Sasha Crane's Motion for Leave to Intervene" at Dkt. No. 43. On December 4, 2025, Plaintiff filed his "Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6)" at Dkt. No. 19. On December 23, 2025, Sasha Crane filed her "Response to Plaintiff's Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Federal Rule 12(b)(6)" at Dkt. No. 28. On December 28, 2025, Plaintiff filed his "Reply to Sasha Crane's Response to Plaintiff's Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Federal Rule 12(b)(6)" at Dkt. No. 31.

**F. Plaintiff's Motion for Sanctions**

On December 22, 2025, Plaintiff filed his "Motion for Sanctions Against Sasha Crane for Violations of Automatic Stay" at Dkt. No. 26. On January 12, 2026, Sasha Crane filed her "Response to Plaintiff's Motion for Sanctions Against Intervenor for Violations of Automatic

Stay" at Dkt. No. 34. On January 20, 2026, Plaintiff filed his "Reply to Sasha Crane's Response to Motion for Sanctions" at Dkt. No. 40. The Court ordered supplemental briefing on the sanctions matter at the hearing held in this case on June 1, 2026. June 1, 2026 Min. Entry. On June 3, 2026, Plaintiff filed his "Brief on Stay Violations by Filing Pleadings in the Bankruptcy Court" at Dkt. No. 63. On June 5, 2026, Sasha Crane filed her "Brief on Stay Violations by Filing Pleadings in Bankruptcy Court" at Dkt. No. 66.

### G. Sasha Crane's Motion for Summary Judgment

On May 27, 2026, Sasha Crane filed her "Motion for Partial Summary Judgment" at Dkt. No. 53. On June 10, 2026, Plaintiff filed his "Response to Sasha Crane's Motion for Partial Summary Judgment" at Dkt. No. 67. On June 17, 2026, Sasha Crane filed her "Reply to Plaintiff's Response to Sasha Crane's Motion for Partial Summary Judgment" at Dkt. No. 71.

## II. Jurisdiction, Venue, and Constitutional Authority

This Court has jurisdiction over this removed action under 28 U.S.C. §§ 1334(b) and 1452. Section 1334(b) gives district courts original but not exclusive jurisdiction over civil proceedings arising under title 11, arising in cases under title 11, or related to cases under title 11. 28 U.S.C. § 1334(b). The voluntary petitions filed by Margo and Jones, CCN, Autowash, SCC Services Corp., and RNS-Crane, L.L.P.[3] show that each Defendant filed a chapter 7 case in the United States Bankruptcy Court for the Southern District of Texas on March 20, 2025. *E.g.*, Bankr. Dkt. No. 1. Because Plaintiff seeks a determination of asserted liabilities owed by the Debtors in pending chapter 7 cases, this proceeding is at least "related to" cases under title 11. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).

[3] The Defendants' bankruptcy cases are as follows: *Margo and Jones, Inc.*, No. 25-70084; *CCN Servs. Corp.*, No. 25-70085; *Autowash Corp.*, No. 25-70086; *SCC Servs. Corp.*, No. 25-70087; *RNS-Crane, L.L.P.*, No. 25-70088.

28 U.S.C. § 1409(a) provides that a proceeding "related to a case under title 11 may be commenced in the district court in which such case is pending." Venue for the instant adversary proceeding is proper here because all of the Debtors' underlying bankruptcy cases are pending in this Court. Dkt. No. 10, ¶ 2.

This Court has constitutional authority to enter a final judgment in this proceeding. Notwithstanding issues related to a bankruptcy court's powers under Article I of the Constitution, parties may consent to entry of final judgment by a bankruptcy court. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668–69 (2015). Both Plaintiff and Sasha Crane consented to this Court's entry of final orders or judgments in this proceeding on all non-core matters. Dkt. Nos. 15, 16. Accordingly, this Court has constitutional authority to render final judgment in the instant adversary proceeding.

## III. Analysis

### A. Sasha Crane's "Motion for Leave to Intervene" at Dkt. No. 41, and Plaintiff's "Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6)" at Dkt. No. 19

Pending before the Court are Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41, filed January 22, 2026, and Plaintiff's Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6) at Dkt. No. 19, filed December 4, 2025. The Court has also considered Sasha Crane's Response to Motion to Strike Intervention at Dkt. No. 28, Plaintiff's Reply in Support of Motion to Strike Intervention at Dkt. No. 31, and Plaintiff's Response to Motion to Intervene at Dkt. No. 43. For the reasons stated *infra*, Sasha Crane's Motion to Intervene at Dkt. No. 41 is DENIED, and because the Court considers Sasha Crane's Motion to Intervene on the merits, Plaintiff's Motion to Strike at Dkt. No. 19 is DENIED as MOOT.

### 1. Legal Standard

"A court must dismiss a complaint as a matter of law when the plaintiff fails 'to state a claim upon which relief can be granted.'" *Hernandez v. Causey*, 124 F.4th 325, 331 (5th Cir. 2024) (quoting Fed. R. Civ. P. 12(b)(6)). To withstand a motion under Federal Rule of Civil Procedure ("*Rule*") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Hernandez*, 124 F.4th at 331. However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). "[A]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). "[W]hile the complaint need not articulate 'detailed factual allegations,' it must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 306 (5th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). "Even so, however, a 'well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 556). "'[D]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7015 makes Rule 15 applicable in adversary proceedings. Rule 15(a)(2) provides that, outside the circumstances in which amendment is permitted as a matter of course, a party may amend its pleading only with the opposing party's written consent or the court's leave. Although leave should be freely given when justice so requires, the Supreme Court recognizes that leave may be denied for reasons including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit applies the same considerations and permits denial of leave when amendment would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000).

Bankruptcy Rule 7024 makes Rule 24 applicable in adversary proceedings. Rule 24(a)(2) provides that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Fifth Circuit requires the movant to show that: (1) the application is timely; (2) the applicant has an interest relating to the property or transaction that is the subject of the case; (3) disposition may impair or impede the applicant's ability to protect that interest; and (4) the existing parties do not adequately represent that interest. *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (en banc). The interest must be direct, substantial, and legally protectable. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463–64 (5th Cir. 1984) (en banc).

Timeliness is determined from all the circumstances. *Nat'l Ass'n for the Advancement of Colored People, N.Y.C. Region of N.Y. Conf. of Branches v. New York*, 413 U.S. 345, 365–66 (1973).

Rule 24(c) requires a motion to intervene to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Rule 24(c) is not a mere formality; it permits the Court and the parties to identify the proposed intervenor's claims or defenses and to evaluate whether intervention is warranted under Rule 24(a) or Rule 24(b).

**2. Analysis**

**a. Sasha Crane's "Motion for Leave to Intervene" at Dkt. No. 41**

When a bankruptcy case is commenced, legal or equitable interests of the debtor become property of the estate under 11 U.S.C. § 541(a)(1). Causes of action belonging to the debtor become estate property, and the chapter 7 trustee generally has the exclusive authority to pursue estate causes of action. *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1283–84 (5th Cir. 1994). Whether a claim belongs to the estate depends on whether the debtor could have brought the claim as of the petition date and whether the claim alleges a generalized injury to the debtor or its creditors, rather than a particularized injury to the claimant. *Id.* at 1284.

Sasha Crane asserts both individual interests and derivative authority to act on behalf of the Debtors. Sasha Crane states that she seeks to intervene in this adversary proceeding and alternatively asks that competing proofs of claim be tried in this adversary proceeding. Dkt. No. 41, ¶ 14. Sasha Crane further argues that she filed an answer "individually, and derivatively" on behalf of the Debtor entities and requested liquidation of both Plaintiff's and her claims. Dkt. No. 28, ¶¶ 2–3. Plaintiff seeks to strike or dismiss Sasha Crane's original and amended intervention

pleadings, contending that she lacks standing to assert claims belonging to the estates, that she did not obtain leave to file the amended intervention, and that her derivative intervention fails to state a claim. *See generally* Dkt. No. 19.

The Court first addresses Rule 24(c). Sasha Crane's Motion for Leave to Intervene is not accompanied by a proposed pleading setting out the claim or defense for which intervention is sought. *See* Dkt. No. 41. The exhibits attached to the Motion for Leave to Intervene are the Debtor's motion to quash a Rule 2004 examination and Plaintiff's responses to requests for production, not a proposed complaint, answer, intervention pleading, or other pleading setting out the claims or defenses to be asserted upon intervention. *Id.* at 15–44. On this record, Sasha Crane's Motion for Leave to Intervene does not satisfy Rule 24(c).

The Court next addresses Rule 24(a)(2). Sasha Crane asserts that she has filed proofs of claim in the Debtors' underlying bankruptcy cases and that she claims an interest in funds held by the Trustee from the sale of the Debtors' assets. Dkt. No. 41, ¶ 12. Plaintiff asserts that Sasha Crane's intervention pleadings seek to pursue derivative claims belonging to the Debtors and therefore belonging to the bankruptcy estates. Dkt. No. 19, ¶¶ 5–6. To the extent Sasha Crane seeks to assert claims derivatively on behalf of the Debtors, those claims are estate property that must be pursued by the Trustee unless derivative standing is properly obtained. *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245–46 (5th Cir. 1988). No such order to that effect has been entered by this Court.

To the extent Sasha Crane relies on her status as a creditor, that asserted interest may be addressed through the claims allowance process in the underlying bankruptcy cases. *Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 410 (5th Cir. 2017). A creditor's interest in maximizing estate distributions does not, without more, establish a right to control or

prosecute estate causes of action in an adversary proceeding. *See Highland Cap. Mgmt., LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584–85 (5th Cir. 2008). Sasha Crane contends that she and Plaintiff have competing proofs of claim and that she seeks liquidation of those claims in this adversary proceeding. Dkt. No. 41, ¶ 13. Denial of intervention in this adversary proceeding will not automatically disallow Sasha Crane's proofs of claim, and thus Sasha Crane lacks a direct, substantial, and legally protectable interest in this adversary proceeding.

Because Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41 does not comply with Rule 24(c), because Sasha Crane failed to show a direct, substantial, and legally protectable interest that entitles her to intervene as of right in this adversary proceeding, and because Sasha Crane does not have authority to pursue estate claims derivatively, Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41 is DENIED. Nevertheless, this Memorandum Opinion and accompanying Order and Judgment do not adjudicate the allowance, disallowance, amount, priority, or distribution treatment of any proof of claim filed in the underlying bankruptcy cases.

**b. Plaintiff's "Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6)" at Dkt. No. 19**

As discussed above, this Court has considered and denied Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41 on its merits. *Supra* Section III.A.3.a. Thus, Plaintiff's Motion to Strike Intervention for Lack of Standing, Failure to Obtain Leave, and to Dismiss Under Rule 12(b)(6) at Dkt. No. 19 is DENIED as MOOT.

**B. Sasha Crane's "Motion for Partial Summary Judgment" at Dkt. No. 53**

Also pending before the Court is Sasha Crane's Motion for Partial Summary Judgment at Dkt. No. 53. As discussed above, Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41 is denied on the merits. *Supra* Section III.A.3.a. Accordingly, Sasha Crane is not a party to this

proceeding. *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) ("The purpose of intervention is to admit, by leave of court, a person who is not an original party into a proceeding. The intervening party *then* becomes 'a party' for the purpose of protecting some right or interest alleged by the intervenor to be affected by the proceeding.") (emphasis added).

Rule 56(a) limits a grant of summary judgment to parties to the proceeding by providing that "[a] *party* may move for summary judgment." Fed. R. Civ. P. 56(a) (emphasis added). Under Rule 56, because Sasha Crane's intervention is denied and she is not a party to this proceeding, Sasha Crane cannot move for summary judgment. *See, e.g.*, *Padgett v. Norfolk S. Corp.*, No. 21-2488, 2022 U.S. App. LEXIS 15891, at *4–6 (7th Cir. June 9, 2022) ("A nonparty moved for summary judgment and the district court granted that improper motion. For that reason, we are compelled to vacate the district court's decision."); *Trs. of the Nat'l Ret. Fund v. Fireservice Mgmt. LLC*, 384 F. Supp. 3d 412, 421 (S.D.N.Y. 2019) ("Because Proposed Intervenors are not parties to this action, their motion for summary judgment under Rule 56 is denied as moot."); *Cashman Equip. Corp. v. Offshore Contractors Ltd.*, No. 15-cv-396, 2016 U.S. Dist. LEXIS 47531, at *8 (W.D. La. Apr. 7, 2016). Thus, Sasha Crane's "Motion for Partial Summary Judgment" at Dkt. No. 53 is DENIED as MOOT.

### C. Plaintiff's "Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgement Against Debtors or for Additional Time to Reply to Such Response" at Dkt. No. 32

Also pending before the Court is Plaintiff's "Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgement Against Debtors or for Additional Time to Reply to Such Response" filed on December 29, 2025, at Dkt. No. 32. As discussed above, Sasha Crane's Motion for Leave to Intervene at Dkt. No. 41 is denied on the merits. *Supra* Section III.A.3.a.

Accordingly, Sasha Crane is not a party to this proceeding. *Deus*, 15 F.3d at 525; *see also supra* Section III.B.

"[M]otions to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (internal quotation marks and alterations omitted) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). When disputed statements are "material and pertinent to the underlying controversy," the statements should not be struck, even if they are "not related to the grounds upon which the district court grant[s] summary judgment." *Id.* (citing *Augustus*, 306 F.2d at 868).

While Sasha Crane may not be a party to this proceeding, as a partial owner of the Debtors, a primary creditor in their bankruptcy cases, and a major part of the history of the instant dispute, she is inextricably linked to resolution of this matter. Although, as discussed above, Sasha Crane cannot obtain summary judgment, her response and statements with respect to Plaintiff's sought grant of summary judgment are certainly related to the controversy here, and material and pertinent to the Court's resolution of this dispute. *Coney*, 689 F.3d at 379. Thus, the Court finds that Sasha Crane's response to Plaintiff's Motion for Summary Judgment should be considered in its resolution of that motion. Accordingly, Plaintiff's "Motion to Strike Sasha Sturdivant Crane's Response to Motion for Summary Judgement Against Debtors or for Additional Time to Reply to Such Response" at Dkt. No. 32 is DENIED.

### D. "Plaintiff's Motion for Summary Judgment" at Dkt. No. 17

Also pending before the Court is Plaintiff's "Motion for Summary Judgment" filed on December 2, 2025, at Dkt. No. 17. Plaintiff moves for summary judgment on his claim that the Debtors owe him equalizing draws or dividends in the amount of $3,557,180.06, exclusive of

interest, attorneys' fees, and costs. *Id.* at 5. The Trustee and Sasha Crane oppose the motion, principally disputing the legal characterization of the challenged transfers, the sufficiency of Plaintiff's evidence, the asserted limitations rule, joint and several liability, and the timing of summary judgment in light of discovery. *See generally* Dkt. Nos. 27, 29. After considering the pleadings, motion, responses, reply, declarations, affidavits, and exhibits in the summary judgment record, and drawing reasonable factual inferences in favor of the nonmovants, the Court concludes that Plaintiff has shown the absence of a genuine dispute of material fact on the issues presented by the motion and that Plaintiff is entitled to judgment as a matter of law.

The Trustee and Sasha Crane oppose summary judgment on the merits, request denial or deferral, and do not object to this Court's authority to enter a final judgment on Plaintiff's motion. *See generally* Dkt. Nos. 27, 29. Fifth Circuit authority recognizes that consent to bankruptcy court adjudication may be implied from participation, provided the consent is knowing and voluntary. *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 391 (5th Cir. 2018) (citation omitted). The Court therefore finds statutory authority under 28 U.S.C. §§ 1334 and 157, and constitutional authority based on the nature of this proceeding, the parties' express consent, Dkt. Nos. 15, 16, and implied consent reflected in the record, to enter a final judgment on the Plaintiff's Motion for Summary Judgment. 28 U.S.C. §§ 157, 1334; *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002).

**1. Background Facts**

Plaintiff is a 50% owner of each Defendant. Dkt. No. 17-3, ¶ 2. Sasha Crane is the other 50% owner of each Defendant. Dkt. No. 29-1, ¶ 1. Sasha Crane and Plaintiff agree that Plaintiff and Scott Crane were equal 50% owners of the Defendants until Scott Crane's death on December 14, 2014, and that Scott Crane's estate transferred its ownership interests to Sasha Crane on

November 1, 2016. *Id.* ¶ 2; Dkt. No. 17-3, ¶ 2. Plaintiff alleges that Scott Crane, individually and through another non-debtor entity, obtained substantial dividends or draws from Defendants and that equivalent dividends or draws were not provided to Plaintiff. Dkt. No. 10, ¶ 14. Plaintiff states that he seeks recovery only of unequal dividends and draws and does not seek a corresponding recovery for the $170,000 paid to Sasha Crane in 2020 because he later received equalizing payments in that amount. Dkt. No. 17, at 4–5. Plaintiff states that he made a demand on Defendants and Sasha Crane on July 14 and 15, 2021, and that Defendants did not pay the demanded equalizing draws or dividends. *Id.* at 5; Dkt. Nos. 17-1, 17-2.

Plaintiff identifies three categories of summary judgment evidence: demand letters to Defendants and Sasha Crane, Plaintiff's Declaration ("*Declaration*"), and other proper summary judgment evidence timely filed in the case. Dkt. Nos. 17-1, 17-2, 17-3. Plaintiff asserts that the Declaration sets forth every unequal distribution for which Plaintiff seeks recovery. Dkt. No. 17, at 8; Dkt. No. 17-3. Plaintiff further states that the computation of $3,557,180.06 was made after review of bank records and interviews of witnesses with firsthand knowledge of the Debtors' financial transactions, and that no party has disputed the computation of the dollar amount as opposed to the characterization and legal consequences of the transactions. Dkt. No. 33, ¶ 1. The Trustee's response identifies the same total amount sought, $3,557,180.06, and breaks it into alleged aggregate transfers of $1,198,050.41 to Scott Crane from 2000 to 2021, $1,677,386.61 to TDS Recycling, a non-debtor entity, and $681,743.04 in estimated pre-2000 transfers. Dkt. No. 27, ¶ 4(d).

The Trustee objects that Plaintiff's evidence does not establish that the transfers were distributions made in compliance with Texas law. *Id.* ¶ 4(a). The Trustee also states that Plaintiff's summary describes many transactions as "loans" or "transfers," and the Trustee relies on Plaintiff's § 341 meeting testimony that no board of director authorizations for dividends were given from

2000 to 2021. *Id.* The Trustee states that Plaintiff appeared as representative of Debtors Margo and Jones and CCN at § 341 meetings held on May 23, 2025, and testified under oath that he had always been a director of those entities and that there had been no board authorizations for the issuance of dividends during the period from 2000 to 2021. *Id.* at 6–7.

Plaintiff argues that the Debtors were small family businesses with identical ownership and common directors, that Plaintiff, Scott Crane, and Baudelia Crane, Plaintiff's wife and Scott Crane's mother, discussed and approved business and financial affairs informally, and that the board members consented to distributions taken by Scott and Sasha Crane. Dkt. No. 33, ¶ 4. Plaintiff acknowledges that there were no formal board meetings or written corporate resolutions for the distributions, but states that Scott and Sasha Crane had board approval to take the distributions they received. *Id.* Plaintiff argues that he interpreted the question about board authorization for dividends at the § 341 meetings as asking whether there were formal written board authorizations, and states that all distributions were orally agreed to by all three board members. *Id.* ¶ 6.

Sasha Crane argues that she had no control over operations, no say in business decisions, no check-writing authority before the car wash businesses were sold, and no access to the Debtors' bank accounts before she later obtained limited access to statements. Dkt. No. 29-1, ¶ 5. Sasha Crane states that Plaintiff approached her in Fall 2020 about purchasing her interests in Autowash and Margo and Jones, that she requested financial books and records, and that she agreed to asset sales after Plaintiff represented that she would receive every cent of her half of the sale proceeds. *Id.* ¶ 6. An email from Plaintiff dated January 5, 2021 states that Plaintiff believed the car wash businesses should be sold and that Sasha Crane would "get every cent of [her] half." Dkt. No. 29-

2, at 8. The asset sales closed on February 12, 2021, and netted approximately $2,100,000 according to Sasha Crane. Dkt. No. 29-1, ¶ 6.

Sasha Crane states that shortly before the asset sale, Plaintiff made distributions to himself totaling $380,724.08, consisting of $198,000 from Margo and Jones and $182,724.08 from Autowash. *Id.* ¶ 8. The Margo and Jones February 2021 bank statement reflects checks posted on February 8, 2021, in amounts including $100,000, $50,000, $20,000, $20,000, and $8,000. Dkt. No. 29-2, at 24–25. The Autowash February 2021 bank statement reflects checks posted on February 8 and February 9, 2021, including check 34538 for $122,869.35 and check 34558 for $59,854.73. *Id.* at 16. Plaintiff admits that he received $170,000 in dividends to equalize amounts Sasha Crane had taken earlier and states that he does not claim additional equalization for those payments. Dkt. No. 17, at 4–5.

Sasha Crane states that she has not received the Debtors' financial records, including company books or ledgers from 2000 to 2021, and that she had received only summary documents drafted by Plaintiff. Dkt. No. 29-1, ¶ 11. Sasha Crane also states that she has not received tax returns for 2000 through 2005 and that those returns would bear on whether payments were salary, dividends, or distributions. *Id.* ¶ 12. Sasha Crane further states that she needed bylaws, partnership agreements, corporate governance documents, and meeting minutes from 2000 to 2020 to respond fully to the motion. *Id.* ¶ 13.

The record contains a Hidalgo County Probate Court order dated February 14, 2025, directing Plaintiff to make certain documents available for inspection, including general ledgers for tax years 2010 through 2014, journal entries and adjustments for those years, 2014 trial balances provided to tax preparers, detailed schedules for those years, and bank reconciliations for those years. Dkt. No. 29-2, at 2–3. Sasha Crane states that she did not receive documents as a result

of that order at or around the time it was entered. Dkt. No. 29-1, ¶ 4. The record also contains tax returns and K-1 materials showing that Margo and Jones had two shareholders in certain years and that Plaintiff and Scott Crane each had a 50% ownership percentage in those years. *See, e.g.*, Dkt. No. 29-3, at 11–12.

**2. Legal Standard**

Rule 56, made applicable to adversary proceedings by Bankruptcy Rule 7056, permits a party to move for summary judgment on any claim, defense, or part thereof. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Union Planters Nat'l Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if a reasonable factfinder could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Once the movant satisfies its burden, the nonmoving party must produce significant probative evidence demonstrating a genuine issue for trial. *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978) (citations omitted). If the record as a whole could not lead a rational trier of fact to find for the nonmovant, summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In deciding a summary judgment motion, the Court does not weigh evidence, assess credibility, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Instead, it views the evidence and draws all justifiable inferences in favor of the nonmovant. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996) (citation

omitted). Those favorable inferences apply only where an actual factual dispute exists; unsupported assertions or speculation will not defeat summary judgment. *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996) (citation omitted). Summary judgment is particularly appropriate where the material facts are undisputed and the case presents only questions of law. *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991) (citation omitted).

Although the Court may consider any materials in the record, it need consider only those cited by the parties. Fed. R. Civ. P. 56(c)(3). Parties may support or oppose summary judgment with depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). A party may object that cited material cannot be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2). While evidence need not be submitted in admissible form at the summary judgment stage, the proponent must show that it can be presented in admissible form at trial. *Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 546–47 (5th Cir. 2024) (citations omitted). Affidavits or declarations must be based on personal knowledge, set forth facts admissible in evidence, and demonstrate the affiant's competence to testify. Fed. R. Civ. P. 56(c)(4). A compliant affidavit may, standing alone, create a genuine issue of material fact sufficient to defeat summary judgment, even if it is self-serving or uncorroborated. *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020).

**3. Plaintiff's Evidence Is Competent for Summary Judgment Purposes**

Plaintiff relies on demand letters and his Declaration to establish the amount and basis of the equalizing draws or dividends claim. Dkt. Nos. 17-1, 17-2, 17-3. The Trustee objects that Plaintiff's evidence consists of letters and a Declaration with an attached spreadsheet and argues that Plaintiff did not submit bank records, shareholder resolutions, corporate records, discovery

responses, depositions, affidavits, or third-party business records sufficient to support summary judgment. Dkt. No. 27, ¶ 4(c). Sasha Crane similarly argues that Plaintiff's Declaration and spreadsheets are self-serving and not supported by the underlying records. Dkt. No. 29, ¶ 21.

Rule 56 permits a party to support or oppose summary judgment with materials in the record, and Fifth Circuit authority recognizes that a movant may meet the initial burden by identifying record materials showing the absence of a genuine dispute or by showing that the nonmovant lacks evidence on an element for which the nonmovant bears the burden. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281–82 (11th Cir. 1999). Plaintiff states that the Declaration was made under penalty of perjury, was based on Plaintiff's personal knowledge, and described Plaintiff's personal involvement in operating the businesses, approving transactions, recording transactions, signing checks, and discussing transactions with Scott Crane and Baudelia Crane. Dkt. No. 33, ¶ 4. The Trustee identifies categories of evidence not submitted but does not identify a specific transaction amount that is numerically incorrect. Dkt. No. 27, ¶ 4(c)–(d). Sasha Crane disputes characterization, access, and completeness, but does not identify an alternative calculation for Plaintiff's equalization claim. *See* Dkt. No. 29-1.

The Court does not disregard Plaintiff's Declaration merely because it is self-interested. Rule 56 places the burden on the nonmovant, after the movant has carried the initial burden, to come forward with specific facts showing a genuine issue for trial. *Ferguson*, 584 F.2d at 114. The record, viewed favorably to the nonmovants, shows disputes over legal characterization and completeness, but does not show a specific evidentiary dispute as to the calculation Plaintiff seeks to recover. On this record, Plaintiff's Declaration and attached computation are competent summary judgment evidence, and the nonmovants have not created a genuine dispute as to the amount of Plaintiff's asserted equalizing claim.

### 4. The Lack of Formal Written Dividend Resolutions Does Not Create a Genuine Dispute that Bars Summary Judgment

The Trustee and Sasha Crane argue that there is no evidence of formally declared dividends and that Plaintiff therefore cannot recover equalizing dividends or draws. Dkt. No. 27, ¶ 4(a); Dkt. No. 29, ¶¶ 32–41. The Trustee's strongest evidence is Plaintiff's testimony from the § 341 meeting that there had been no board authorizations for dividends during the 2000-to-2021 period. Dkt. No. 27, ¶ 4(a). Plaintiff acknowledges the absence of formal written resolutions but states that the directors and owners orally agreed to the distributions and that all distributions to Scott and Sasha Crane were authorized informally. Dkt. No. 33, ¶ 6.

The material question is not whether the Debtors used formal written resolutions; the material question is whether the record permits a rational factfinder to reject Plaintiff's claim that the challenged benefits to the other 50% owners required equalization. A nonmovant cannot defeat summary judgment by relying on a formal denial after the movant identifies record evidence and the nonmovant does not designate specific facts creating a triable dispute. *Ferguson*, 584 F.2d at 114. The Trustee's evidence establishes, at most, the absence of formal board authorizations. Plaintiff admits that point and explains that the approvals were informal and unanimous. Dkt. No. 33, ¶ 6. Sasha Crane does not provide personal knowledge of the internal approvals for distributions to Scott Crane before his death, and states that she had no control over operations and no access to accounts. Dkt. No. 29-1, ¶ 5. The record therefore does not create a genuine dispute that formal written resolutions are absent, and the absence of formal written resolutions does not defeat Plaintiff's motion on this record.

### 5. Limitations Do Not Bar the Motion on the Present Summary Judgment Record

Plaintiff alleges that he made demand for equalizing draws and dividends on July 14 and 15, 2021, and filed suit shortly thereafter. Dkt. Nos. 17, at 5; 17-1; 17-2. Plaintiff's First Amended

Complaint alleges written demands and nonpayment. Dkt. No. 10, ¶ 15. The Trustee and Sasha Crane argue that Plaintiff's limitations theory depends on distinguishable Texas cases involving declared dividends and that Plaintiff cannot use a demand letter to revive decades-old claims. Dkt. No. 27, ¶ 4(b); Dkt. No. 29, ¶¶ 32–52. Plaintiff replies that limitations on the equalizing-distribution claim did not begin before demand and refusal, and that no party cited controlling contrary authority in the record. Dkt. No. 33, ¶ 11. In support, Plaintiff cites *Cassidy-Sw. Comm'n Co. v. Guar. Tr. Co. of N.Y.*, 174 S.W.2d 494, 496 (Tex. App.—Fort Worth 1943), which held that "[i]t seems to be the rule in Texas that until and unless the stockholder demands his dividends and payment is refused, or until the company declaring the dividends expressly repudiates its obligation to pay same to its stockholder, the statute of limitations does not begin to run." Plaintiff also cites *Yeaman v. Galveston City Co.*, 167 S.W. 710, 724 (Tex. 1914), for its holding that "[t]he debt which a declared dividend creates on the part of the corporation to the stockholder, is one payable only on demand . . . . It is not subject to limitation until there has been a demand upon the corporation and a refusal to pay."

The summary judgment record shows that Plaintiff's demand was made in July 2021 and that the State Court Case was filed in July 2021. Dkt. Nos. 17-1, 17-2; Bankr. Dkt. No. 2-1, at 2. The nonmovants dispute Plaintiff's legal characterization but do not identify record evidence showing that Plaintiff demanded payment and was refused more than four years before filing suit. Because the limitations defense depends on a demand-and-refusal date earlier than the one shown in the record, and because no such earlier demand-and-refusal evidence can be located in the present record, limitations do not present a genuine dispute of material fact precluding summary judgment.

**6. The Record Supports Joint and Several Liability for Purposes of Summary Judgment**

Plaintiff seeks summary judgment against all Debtors jointly and severally. Dkt. No. 17, at 12. The Trustee objects that Plaintiff provides no legal or factual support for imposing liability on each Debtor for alleged transfers made by another Debtor. Dkt. No. 27, ¶ 4(d). Plaintiff replies that the Debtors had identical owners, were operated by the same persons, shared assets and employees, carried intercompany due-to and due-from balances, and functioned as one integrated enterprise for purposes of owner equalization. Dkt. No. 33, ¶¶ 15–17.

The Trustee identifies a legal concern but does not submit contrary evidence showing that the Debtors maintained separate owner equalization obligations inconsistent with Plaintiff's evidence. Plaintiff's evidence is supported by the record showing common ownership across the Debtors and common chapter 7 filings in this district. Plaintiff supplies uncontroverted record evidence that the Debtors were operated with shared personnel, shared assets, intercompany transfers, and common owner expectations. Dkt. No. 33-1, ¶¶ 8–10. On this record, no genuine dispute of material fact prevents summary judgment on joint and several liability.

**7. The Rule 56(d) Request Does Not Justify Deferring Summary Judgment**

Sasha Crane asks in the alternative for relief under Rule 56(d), stating that she needs company ledgers and books from 2000 through 2021, tax returns from 2000 through 2005, bylaws, partnership agreements, governance documents, and meeting minutes. Dkt. No. 29, ¶¶ 53–61. Sasha Crane states that she has not received those documents and needs them to verify Plaintiff's summaries and characterize the payments. Dkt. No. 29-1, ¶ 11. The Trustee similarly argues that summary judgment on the present record is premature because the discovery period remained open until March 16, 2026. Dkt. No. 27, ¶ 4(e).

Rule 56(d) exists to address situations in which the nonmovant cannot present facts essential to justify opposition but still must identify facts that are essential to defeat the motion for summary judgment, rather than allowing the nonmovant to merely seek discovery that might bear generally on the dispute. *Celotex Corp.*, 477 U.S. at 322–23. The present record shows that the State Court Case began in 2021, that Defendants appeared in 2021, and that Plaintiff filed the present summary judgment motion in December 2025. Plaintiff states that thousands of documents have been provided and that the case has been pending for more than four years. Dkt. No. 17, at 7. The nonmovants identify categories of documents they want to review, but they do not identify any specific fact expected from those materials that would defeat Plaintiff's showing as to the amount of unequal owner benefits, the demand, nonpayment, or calculation. The Court therefore denies the alternative Rule 56(d) request. The nonmovants have not shown that additional discovery is essential to present facts sufficient to create a genuine dispute on the issues resolved by this motion.

**8. Conclusion**

Plaintiff has identified record evidence supporting ownership, unequal draws or dividends, demand, nonpayment, and the amount sought. The Trustee and Sasha Crane have identified disputes over characterization, formality, and discovery, but they have not presented a competing calculation, a prior demand-and-refusal date, or evidence that Plaintiff received equalizing payments for the $3,557,180.06 claim. Rule 56 requires more than metaphysical doubt or a general request to test the movant's evidence after the movant has made a supported showing. *Latimer v. Smithkline & French Lab'ys, Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir. 1990) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 584–85). The record as a whole would not permit

a rational trier of fact to find against Plaintiff on the issues presented by the motion. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Under the standards governing summary judgment in the Fifth Circuit, as articulated in *Celotex Corp.*, 477 U.S. 317, and its progeny, a party opposing summary judgment must make a sufficient showing to establish the existence of an essential element of their case on which they bear the burden of proof at trial. Specifically, Rule 56(a) mandates the entry of summary judgment if, after adequate time for discovery, the nonmovant fails to present evidence sufficient to create a genuine dispute of material fact regarding an essential element of their claim. *Herrera v. Millsap*, 862 F.2d 1157, 1159–60 (5th Cir. 1989) (quoting *Celotex Corp.*, 477 U.S. at 322).

For the reasons stated *supra*, Plaintiff is entitled to a judgment as a matter of law because he has made a sufficient showing of the essential elements of his case with respect to which he had the burden of proof, and the Trustee and Sasha Crane have failed to rebut his showing with contrary evidence. *Supra* Section III.D.3–7. Accordingly, Plaintiff's "Motion for Summary Judgment" at Dkt. No. 17 is GRANTED. The Court will enter a separate final Judgment declaring that Defendants are jointly and severally liable to Plaintiff in the principal amount of $3,557,180.06, exclusive of any recoverable, costs, and attorneys' fees. Plaintiff may seek attorneys' fees and costs by appropriate post-judgment motion as contemplated in his motion. All relief not expressly granted herein will be denied.

**E. "Motion for Sanctions Against Sasha Crane for Violations of Automatic Stay" at Dkt. No. 26**

Also pending before the Court is Plaintiff's "Motion for Sanctions Against Sasha Crane for Violations of Automatic Stay" at Dkt. No. 26. Plaintiff argues that Sasha Crane should be sanctioned because she allegedly violated the automatic stay by pursuing a shareholder derivative suit on behalf of the Debtors in the above-captioned adversary proceeding, when it is well-

established that any shareholder derivative suit that could be pursued on behalf of the Debtors would be property of their bankruptcy estates. Dkt. No. 26, ¶¶ 2–3. Plaintiff argues that he was injured by Sasha Crane's violation of the automatic stay because he incurred fees and expenses defending the shareholder derivative suit and responding to discovery requests. *Id.* ¶ 7. In response, Sasha Crane argues that the automatic stay inures to the benefit of the Debtors, not Plaintiff, and in any event, if anyone was injured by her assertion of a shareholder derivative suit, it would be the Trustee and not Plaintiff. Dkt. No. 34, ¶ 6.

**1. Legal Standard**

Pursuant to § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The Fifth Circuit has identified three elements that must be shown to recover for a violation of the automatic stay: (1) the defendant had knowledge of the existence of the automatic stay; (2) the defendant's acts were intentional; and (3) the defendant's acts violated the automatic stay. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005). The Fifth Circuit has also found that pre-petition creditors are "individuals" within the meaning of § 362(k), and that actions against them in violation of the automatic stay may provide sufficient basis for sanctions due to a violation of the automatic stay. *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 545 (5th Cir. 2009). Section 362(k)(1) provides that an individual injured by a stay violation "shall" recover actual damages, and that they "may" recover punitive damages. The Fifth Circuit has found that a recovery of punitive damages under § 362(k)(1) requires "egregious conduct" on the part of the stay violator. *Monge v. Rojas (In re Monge)*, 826 F.3d 250, 256 (5th Cir. 2016) (quoting *Young v. Repine (In re Repine)*, 536 F.3d 512, 521 (5th Cir. 2008)).

### 2. Analysis

Plaintiff must show that four elements are met to recover against Sasha Crane for a stay violation: (1) knowledge of the automatic stay; (2) intentionality; (3) violation of the automatic stay; and (4) injury. *Chesnut*, 422 F.3d at 302. The Court examines each in turn.

First, Sasha Crane clearly had knowledge of the automatic stay. A party who has knowledge of a bankruptcy filing is charged with knowledge of the automatic stay. *Coats v. Vawter (In re Coats)*, 168 B.R. 159, 166 (Bankr. S.D. Tex. 1993) (quotation omitted). Sasha Crane received notice of the Debtors' bankruptcy cases, see, e.g., Bankr. Dkt. No. 5, at 2, and filed a claim in the Debtors' bankruptcy cases. *See, e.g.*, Bankr. Claim No. 2. Further, Sasha Crane does not dispute knowledge of the automatic stay in her response to the Motion for Sanctions. *See generally* Dkt. No. 34. Thus, notice of the automatic stay is imputed to Sasha Crane due to her knowledge of and participation in the Debtors' bankruptcy cases.

Second, Sasha Crane clearly acted intentionally. Plaintiff identifies a number of pleadings and discovery requests filed and served by Sasha Crane after imposition of the automatic stay and argues that "[t]hose pleadings and filings were not done by accident." Dkt. No. 26, ¶¶ 3, 6. Sasha Crane does not dispute that the pleadings and discovery requests were filed and served intentionally. *See generally* Dkt. No. 34. This Court agrees with Plaintiff and finds that Sasha Crane acted intentionally when she filed pleadings and served discovery requests on Plaintiff after the automatic stay was imposed.

Third, Sasha Crane's actions violated the automatic stay. As noted above, contrary to Sasha Crane's argument, the automatic stay does not inure solely to the benefit of debtors: pre-petition creditors are included within the broad term "individuals" used in § 362(k)(1). *Labuzan*, 579 F.3d at 545. Further, when a corporate debtor files bankruptcy, a shareholder derivative claim that could

have been brought against the debtor's officers or directors becomes property of the bankruptcy estate, pursuable in the first instance by the trustee. *Collins v. Sydow (In re NC12, Inc.)*, 478 B.R. 820, 833 (Bankr. S.D. Tex. 2012) (collecting cases); *Angel v. Tauch (In re Chiron Equities, LLC)*, 552 B.R. 674, 686 (Bankr. S.D. Tex. 2016). Thus, the assertion of a claim owned by the debtor, including a shareholder derivative claim, is an act "to exercise control over property of the estate," prohibited by the automatic stay pursuant to § 362(a)(3). *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., LLC)*, 26 F.4th 285, 296 (5th Cir. 2022); *In re Tommy's Ft. Wor., LLC*, 671 B.R. 712, 730 (Bankr. N.D. Tex. 2025). Accordingly, Sasha Crane's filing of pleadings and service of discovery requests in furtherance of prosecution of shareholder derivative claims owned by the Debtors' estates was a violation of the automatic stay.

Fourth, Plaintiff suffered injury as a result of Sasha Crane's knowing, intentional violation of the automatic stay. Plaintiff has incurred fees and expenses from defending the shareholder derivative suit and responding to discovery requests in connection with that suit. Dkt. No. 26, ¶ 7. Sasha Crane argues that if anyone was harmed by her violation of the automatic stay, it was the Trustee, not Plaintiff. Dkt. No. 34, ¶ 6. The Court finds this argument unpersuasive. It may be true that the Trustee was harmed by Sasha Crane's violation of the automatic stay, though such a claim has not been asserted. At the same time, Plaintiff has also been injured by Sasha Crane's violation of the automatic stay because he has incurred fees and costs in defending and responding to Sasha Crane's assertion of a claim owned by the Debtors' estates. Therefore, Sasha Crane's actions have harmed the Debtors' estates to the extent that the estates were deprived of control over the shareholder derivative claims, while at the same time harming Plaintiff by forcing him to defend against claims not properly brought against him. Thus, Plaintiff has shown that all required elements for a finding that Sasha Crane violated the automatic stay have been met.

While the Court finds that Sasha Crane knowingly and intentionally violated the automatic stay, the Court also finds that punitive damages are not appropriate in this case. Punitive damages are appropriate when violations of the automatic stay amount to "egregious conduct." *Monge*, 826 F.3d at 256 (quotation omitted). While Sasha Crane's repeated violations of the automatic stay come close to crossing the line into egregious conduct, given the unique circumstances here, punitive damages are not warranted. This litigation has been ongoing since 2021 and weaved its way through multiple courts before ultimately coming before this Court, with Sasha Crane's status as a party or nonparty shifting over the duration. When Sasha Crane made her actions in violation of the automatic stay, her Motion for Leave to Intervene at Dkt. No. 41 was pending, the granting of which may have cured at least some of her violations. Plaintiff has not alleged any unique injuries resulting from the stay violation beyond the legal fees and costs incurred in defending against the shareholder derivative suit and responding to discovery requests. Plaintiff will be adequately compensated for these injuries through an award of actual damages.

Plaintiff has requested leave to submit his request for fees in accordance with Rule 54(d), made applicable to this proceeding by Bankruptcy Rule 7054(b). Dkt. No. 26, ¶ 7. The Court finds this to be an appropriate procedure in this instance and will order Plaintiff to make his motion pursuant to Rule 54(d) within 14 days of entry of judgment.

**3. Conclusion**

Plaintiff has demonstrated that by prosecuting a shareholder derivative claim that is property of the Debtors' bankruptcy estates, Sasha Crane knowingly and intentionally violated the automatic stay. Plaintiff has not, however, demonstrated that Sasha Crane's conduct was "egregious" and thus punitive damages are not warranted in this case. Accordingly, the "The "Motion for Sanctions Against Sasha Crane for Violations of Automatic Stay" filed by Plaintiff

Robert H. Crane at Dkt. No. 26 on December 22, 2025, is GRANTED to the extent it seeks recovery for Plaintiff's actual damages. To the extent it seeks punitive damages, it is DENIED. Robert H. Crane is granted Judgment against Sasha Crane as to liability for violations of the automatic stay, 11 U.S.C. § 362(a). Pursuant to Federal Rule of Civil Procedure 54(d)(2), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7054(b), Plaintiff must, not later than 14 days after entry of this Judgment, file a motion detailing the reasonable and necessary fees and costs incurred in responding to pleadings and discovery requests filed and served by Sasha Crane in violation of the automatic stay. Pending further notice, opportunity for hearing, and approval by this Court, such fees and costs shall be awarded to Plaintiff Robert H. Crane and against Sasha Crane.

## IV. CONCLUSION

A Judgment consistent with the foregoing shall be entered contemporaneously herewith.

**SIGNED Tuesday, October 20, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**